Case 2:21-cv-00164 Document 16 Filed on 01/28/22 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
January 28, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **BEDESCHI AMERICA, INC.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00164 |
| **MACHINE REPAIR INTERNATIONAL, LLC D/B/A VEZER INDUSTRIAL PROFESSIONALS,** | § § § § § | |
| Defendant. | § § | |

| | | |
|---|---|---|
| **MACHINE REPAIR INTERNATIONAL, LLC D/B/A VEZER INDUSTRIAL PROFESSIONALS,** | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:21-CV-00141 |
| **BEDESCHI AMERICA, INC.,** | § § § | |
| Defendant. | § § | |

### MEMORANDUM OPINION AND ORDER

These cases arise out of a dispute between a contractor, Bedeschi America, Inc. ("Bedeschi"), and a subcontractor, Machine Repair International LLC d/b/a Vezer Industrial Professionals ("Vezer"), over their agreement to construct the voestalpine Texas, LLC byproduct handling plant in Portland, Texas. Vezer has filed a Motion to Compel Arbitration in both suits. For the reasons that follow, the Court **GRANTS** the motions and **STAYS** the cases pending arbitration.

I. **BACKGROUND**

Bedeschi, a producer of heavy industrial machinery, (Dkt. No. 1-2 at 10),[1] entered into an agreement with steelmaker voestalpine Texas, LLC to build a byproduct handling plant in Portland, Texas. (Dkt. No. 6-3 at 2). On August 5, 2020, Bedeschi hired Vezer, the subcontractor, to perform the mechanical, structural, electrical, and concrete work on the plant, (*id.*), but by June 2021, the relationship between the Parties had soured. (Dkt. No. 1-2 at 13–14). Vezer asserts that it performed more than $6 million of work for which it was not compensated. (Dkt. No. 9-5 at 4). Bedeschi counters that it did not pay Vezer because Vezer had nearly reached what Bedeschi argues is the maximum cap on Vezer's fees under their agreement—$13,350,685.84. (Dkt. No. 1-2 at 15).

The Court previously recounted the procedural history of this dispute in its Order Consolidating Cases. (Dkt. No. 15). Vezer filed a Motion to Compel Arbitration on August 20, 2021. (Dkt. No. 6). Bedeschi filed a Response on September 10, 2021.[2] (Dkt. No. 7).

II. **LEGAL STANDARDS**

Vezer seeks to compel arbitration of this dispute under the Federal Arbitration Act. (Dkt. No. 6) (citing 9 U.S.C. § 1, *et seq.*). Vezer also asks the Court to "stay or administratively close this case pending arbitration." (*Id.* at 6). The Supreme Court has stated that the Federal Arbitration Act "declares a national policy favoring arbitration of

---

[1] The docket citations herein refer to the lead case, 2:21-CV-00164, unless otherwise indicated.

[2] In Civil Action 2:21-CV-00141, Vezer filed a motion to compel on August 20, 2021, and Bedeschi filed a response on September 10, 2021.

claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 983, 169 L.Ed.2d 917 (2008) (cleaned up). The Fifth Circuit prescribes "two analytical steps" in determining whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

"The first [step] is contract formation—whether the parties entered into *any arbitration agreement at all*." *Id.* (emphasis in original). This question is governed by state law principles of contract formation and interpretation. *Id.* at 202. Texas, in line with the United States Supreme Court, favors enforcement of arbitration agreements. *See, e.g., Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 nn.38–45 (Tex. 2008) (collecting cases).

"The second [step] involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala*, 830 F.3d at 201 (emphasis in original). The second step is also a matter of law for the court to decide.[3] *Id.* If an arbitration agreement is found, "there is a presumption that their disputes will be deemed arbitrable unless it is clear that the arbitration clause has not included them." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 303 (5th Cir. 2021) (cleaned up). Thus, "the party resisting arbitration shoulders the burden of proving that the dispute is not arbitrable." *Id.* (cleaned up). When the court determines that both steps are satisfied, Congress directs the court to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3.

---

[3] The contract interpretation step may be delegated. "Because arbitration is a matter of contract, the power and authority of arbitrators in an arbitration proceeding is dependent on the parties' agreement." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, 999 F.3d 257, 263 (5th Cir. 2021) (cleaned up). Here, there is no indication that the second step was delegated.

### III. DISCUSSION

#### A. THE PARTIES ENTERED INTO AN ARBITRATION AGREEMENT

##### 1. Bedeschi Agreed to the Terms and Conditions

The first inquiry in the two-step analysis is whether the Parties entered into a valid arbitration agreement. The Parties agree that Texas contract law applies.[4] *See* (Dkt. No. 6 at ¶ 9); (Dkt. No. 7 at ¶¶ 9–10). The Parties also agree that the contract is comprised of two documents: (1) the August 5, 2020 Letter of Intent between Bedeschi and Vezer and (2) Vezer's Proposal No. 019-199-DAD Rev. 09, which is incorporated by reference in the Letter of Intent.[5] *See* (Dkt. No. 1-2 at 12–13); (Dkt. No. 9 at ¶ 20). But the Parties dispute the scope of the Proposal. Bedeschi contends that it never accepted the portion marked "Terms and Conditions of Proposal" on pages 21 and 22 of Vezer's Proposal. *See* (Dkt. No. 7 at ¶ 23). Bedeschi argues that because the Letter of Intent states "Both Parties commit to conclude a final subcontract agreement within 30 days," it never "intended to agree" to the Terms and Conditions. (*Id.*). This argument is without merit. Despite Bedeschi's protestations, the Letter of Intent and the Proposal together formed the contract between Bedeschi and Vezer because the Parties never negotiated a formal subcontract to supplant their initial agreement.

---

[4] Under Texas law, a contract requires, "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018).

[5] Specifically, the Letter of Intent states, "Until the Parties can Mutually Agree to a formal Subcontract Agreement. This LETTER OF INTENT AND VEZER's Proposal will be the Agreement and VEZER can bill and be paid off of this Agreement." (Dkt. No. 6-3 at 2).

4

"A meeting of the minds is necessary to form a binding contract." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). Under Texas Law, "[t]he determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)); *see also* 1 Williston on Contracts § 3:5 (4th Ed.) (to determine whether the parties "actually intend to contract," the court's concern is the "parties' objective intent, rather than their hidden, secret or subjective intent.").

The record reflects that Bedeschi actually negotiated and agreed to the Terms and Conditions. For example:

(1) The bottom of the Letter of Intent declares, "Below Signature [sic] of the authorized Parties signify Agreement to all the terms above and the attached VEZER Proposal," and the Letter is signed by officers of both companies, (Dkt. No. 6-3 at 2);

(2) The Letter of Intent states, "Until the Parties can Mutually Agree to a formal Subcontract Agreement. [sic] This LETTER OF INTENT AND VEZER's Proposal will be the Agreement and VEZER can bill and be paid off of this Agreement," (*id.*);

(3) The Proposal was attached to the Letter of Intent, (*id.*);

(4) The pages of the Proposal are numbered in the format "[x] of 22" with the Terms and Conditions labeled pages "21 of 22" and "22 of 22," (*id.* at 3–24);

(5) The top of the Terms and Conditions states in bold, all-caps font that is larger than the other text on the page, "**CONTRACTOR'S PROPOSAL IS EXPRESLLY [sic] CONDITIONED UPON THE FOLLOWING TERMS AND CONDITIONS. IF CLIENT CONTRACTS WITH CONTRACTOR FOR THE WORK DESCRIBED IN THE PROPOSAL, THEN CLIENT AGREES TO**

5

> AND ACCEPTS ALL OF THE FOLLOWING TERMS AND CONDITIONS," (*id.* at 23);

(6)  An officer of Bedeschi and an officer of Vezer initialed the bottom of each page of the Proposal, including the Terms and Conditions—twenty-two initials in total, (*id.* at 3–24);

(7)  Terms and Conditions 30, 39, 50, 60, and 67 were removed, (*id.* at 23–24); and

(8)  Terms and Conditions 52, 56, and 72 were amended, (*id.*).

The foregoing demonstrates that Bedeschi agreed to the Terms and Conditions. There is ample indication that what the Parties "said and did" evidenced a meeting of the minds as to the Terms and Conditions. *See In re Capco Energy, Inc.*, 669 F.3d at 280. While Bedeschi makes much of the Parties' agreement to eventually conclude a final subcontract, Bedeschi fails to point to authority establishing that an agreement to enter into another agreement changes the analysis. *See* (Dkt. No. 7 at 4–8). Put simply, the Parties "agreed to arbitrate the dispute." *See Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

Furthermore, Bedeschi's acceptance is confirmed by the ratification doctrine. Under Texas law, a party ratifies a contract when it "recognizes the validity of the contract by acting under the contract, performing under the contract, or affirmatively acknowledging the contract." *Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 329 (Tex. App.—Corpus Christi-Edinburgh 2012, pet. denied). In correspondence between Bedeschi and Vezer's lawyers on June 24, 2021, counsel for Bedeschi invoked the Terms and Conditions that it now argues it never agreed to by reserving its rights under several of them. *See* (Dkt. No. 9-2 at 3). In fact, in Bedeschi's state court Petition—which was removed to this

Court and remains the operative pleading—Bedeschi invokes its right under the Terms and Conditions to recover attorney's fees and notes that it complied with the conditions precedent to bringing suit, also under the Terms and Conditions. (Dkt. No. 1-2 at 17); *see also* (Dkt. No. 6-3 at 24 ¶¶ 83–87) (the dispute resolution clauses of the Terms and Conditions). The Court finds that Bedeschi agreed to the Terms and Conditions.

### 2. The Arbitration Agreement is not Ambiguous

Next, Bedeschi argues that even if it agreed to the Terms and Conditions, the arbitration clause is unenforceable because it is so vague or ambiguous that the Court cannot determine the intent of the Parties or what to enforce. (Dkt. No. 7 at ¶¶ 13–21). This argument likewise fails.

The Court first turns to the text of the arbitration clause. The clause must be read in conjunction with the preceding dispute resolution clauses in Terms and Conditions 85–87.[6] The arbitration clause states:

> 87 If the mediation does not resolve the Dispute, then Client and Contractor may commence litigation in a

---

[6] The preceding dispute resolution clauses state:

> 85 In the event a dispute arises between Client and Contractor regarding the interpretation and/or enforcement of the Proposal, the Final Agreement, and/or the Work (a "Dispute"), then a Client executive with full settlement authority and Contractor's CEO or COO shall meet in-person within 14 days from either party's request to negotiate in good faith[.]
>
> 86 If the meeting between the Client executive with full settlement authority and Contractor's CEO or COO does not resolve the Dispute, then within 14 days from that meeting Client and Contractor shall mediate the Dispute with a neutral mediator[.]

(Dkt. No. 6-3 at 24 ¶¶ 85–86).

7

> court of competent jurisdiction [sic] Contractor has the absolute and exclusive right to bring its claims in arbitration and to compel any claims brought by Client into arbitration, if Contractor elects[.]

(Dkt. No. 6-3 at 24 ¶ 87).

Bedeschi cites *Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 784 (7th Cir. 2014), to argue that the clause is ambiguous because it does not specify the terms of arbitration, the arbitral body that will oversee it, the number of arbitrators, or who will bear the costs. *See* (Dkt. No. 7 at ¶ 17). However, the clause in *Druco* was governed by Indiana law, not Texas law. *See Druco Restaurants*, 765 F.3d at 781. Bedeschi does not cite, and the Court has not found, any Texas authority holding arbitration clauses to such exacting standards. On the contrary, under Texas law, "[a] contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (quotations omitted). "Ambiguity does not exist merely because the parties assert forceful and diametrically opposing interpretations." *Id.*

Here, the clause is plain on its face. There is a condition precedent—mediation that does not resolve the dispute—which was satisfied on July 12, 2021. (Dkt. No. 9 at 5). In that event, the arbitration clause states, "Contractor has the absolute and exclusive right to bring its claims in arbitration and to compel any claims brought by Client into arbitration, if Contractor elects[.]" (Dkt. No. 6-3 at 24 ¶ 87). This language is not subject to more than one reasonable interpretation. Thus, the language is not ambiguous. *See In re D. Wilson Const. Co.*, 196 S.W.3d at 781.

8

Nonetheless, Bedeschi asks the Court to find the arbitration clause unenforceable as ambiguous because it lacks procedural detail. But that is contrary both to Fifth Circuit precedent, *cf. Matter of Willis*, 944 F.3d 577, 582 (5th Cir. 2019) (citing *Ragab v. Howard*, 841 F.3d 1134, 1139–41 (10th Cir. 2016) (Gorsuch, J., dissenting)), as well as the text of the Federal Arbitration Act, which allows courts to designate certain details that were not specified. *See* 9 U.S.C. § 5.[7] The missing terms here are not essential terms. Instead, "they concern such innocuities as the number of arbitrators, location, and fee shifting." *Willis*, 944 F.3d at 582. The Court finds that the clause is not ambiguous under Texas law.

### 3.     **The Arbitration Agreement is not Illusory**

Finally, Bedeschi argues that the arbitration clause is illusory. Specifically, Bedeschi contends that the unilateral and permissive nature of the arbitration clause (only Vezer can compel arbitration) renders it illusory. (Dkt. No. 7 at ¶¶ 15–21). This too fails.

When an arbitration clause is part of a greater contract, the court should look for consideration with respect to the entire contract. *See In re AdvancePCS Health L.P.*, 172

---

[7]     The relevant provision of the Federal Arbitration Act states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but *if no method be provided therein*, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy *the court shall designate and appoint an arbitrator or arbitrators or umpire*, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphases added).

S.W.3d 603, 607 (Tex. 2005); *accord In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006). Here, the arbitration clause is part of a comprehensive agreement between two sophisticated, international, industrial contractors, dealing at arm's length. Bedeschi bargained for and received ample contractual obligations from Vezer to support the unilateral nature of Vezer's arbitration right as evinced by the machinery, expertise, and money exchanged.

Bedeschi cites *Morrison v. Amway Corp.* and *J.M. Davidson Inc. v. Webster* in support of its contention that the clause is illusory. 517 F.3d 248, 257–58 (5th Cir. 2008); 128 S.W.3d 223, 230 n.2 (Tex. 2003). But those cases do not apply. In *Morrison*, the Fifth Circuit held that an arbitration clause was illusory because one party had a unilateral right to amend the arbitration clause *retrospectively*. 517 F.3d at 257. And in *J.M. Davidson*, the Supreme Court of Texas held that an arbitration agreement was ambiguous because the employer retained a unilateral right to "abolish or modify any personnel policy" and the court was uncertain whether the arbitration agreement was a "personnel policy." 128 S.W.3d at 229. The Supreme Court of Texas also noted that most courts "have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory." *Id.* at 230 n.2 (collecting cases).

*Morrison* and *J.M. Davidson* are distinguishable from the situation here. Vezer has no right to retrospectively amend or terminate the terms of the arbitration agreement. Vezer has a unilateral right to compel arbitration, which is supported by consideration. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) ("[W]hen an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice

10

as consideration for the arbitration clause."); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam).  The Court finds that the clause is not illusory.

***

In sum, the Court finds that there is a valid arbitration agreement between Bedeschi and Vezer.  *See Kubala*, 830 F.3d at 201.  The contract is comprised of the Letter of Intent and the Proposal, including the Terms and Conditions.  The arbitration clause in the Terms and Conditions is not vague, ambiguous, or illusory.

### B.     THE ARBITRATION AGREEMENT COVERS THIS CLAIM

The second inquiry in the two-step analysis for determining whether to enforce an arbitration agreement is whether this dispute falls within the scope of the arbitration clause.  *See Kubala*, 830 F.3d at 201.  Unlike the Court's inquiry into contract formation, the scope of the Terms and Condition's arbitration clause is a question of federal law.[8] *Graves v. BP America, Inc.*, 568 F.3d 221, 222–23 (5th Cir. 2009) (per curiam); *see also Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 282 n.37 (5th Cir. 2019).

Here, the arbitration clause requires arbitration of a "Dispute."  (Dkt. No. 6-3 at 24 ¶ 85).  The Terms and Conditions define "Dispute" as a "dispute . . . between Client and Contractor regarding the interpretation and/or enforcement of the Proposal, the Final

---

[8] *See also FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 693 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).  There, the court held that "when determining whether parties have agreed to arbitrate[,] courts should apply ordinary state law principles regarding the formation of contracts."  *Id.*  But the court also noted that there is a separate question of whether a claim falls within the agreement's scope.  As the court explained, "Texas and federal law are clear that under the [Federal Arbitration Act], state law governs whether a litigant agreed to arbitrate, and *federal law governs the scope of an arbitration clause*."  *Id.*  (internal quotations omitted) (emphasis in original).

11

Agreement, and/or the Work[.]" (*Id.*). In this case, the interpretation of the Proposal is at issue—Bedeschi and Vezer both seek resolution of the amount Bedeschi owes Vezer under the contract.

Vezer maintains that this dispute falls within the scope of the arbitration clause. *See* (Dkt. No. 6 at ¶15). Bedeschi does not argue to the contrary in its briefing. To be sure, Bedeschi only challenges the *validity* of the arbitration clause. In its Response, Bedeschi does not address whether this controversy—how much, if anything, it owes Vezer—falls within the scope of the arbitration clause. *See* (Dkt. No. 7). Bedeschi carries the burden of proving that the arbitration clause does not apply to this dispute. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."). Because Bedeschi failed to challenge the scope, it does not meet its burden of establishing that the clause does not apply to the dispute at hand. Even so, the language is clear, and an argument to the contrary would not be availing. The Court holds that this dispute falls within the scope of the arbitration clause. *See Kubala*, 830 F.3d at 201.

    C.    **VEZER DID NOT WAIVE ITS RIGHT TO COMPEL ARBITRATION**

Finally, Bedeschi argues that even if it agreed to the Terms and Conditions and they are unambiguous and are not illusory, Vezer waived its right to arbitrate. (Dkt. No. 7 at ¶¶ 25–30). "In light of the federal policy favoring arbitration, there is a strong presumption against finding a waiver of arbitration." *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421–22 (5th Cir. 2014) (cleaned up). A party waives its right to arbitrate

12

a dispute when the party seeking arbitration (1) substantially invokes the judicial process (2) to the detriment or prejudice of the other party.[9] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, 999 F.3d 257, 266 (5th Cir. 2021). Both elements are required for the Court to find waiver, and substantial invocation and prejudice are questions of federal law. *Id.* Bedeschi contends both conditions are present here. (Dkt. No. 7 at ¶¶ 25–30).

Some background on both cases in this dispute is important. On July 12, 2021, Bedeschi filed suit in Texas state court, 45 minutes after mediation between Bedeschi and Vezer ended. (Dkt. No. 1-2 at 10); (Dkt. No. 9-5 at ¶ 26). That suit is styled *Bedeschi v. Vezer*, Civil Action 2:21-CV-00164. The next day, July 13, Vezer filed suit in the Southern District of Texas. (Dkt. No. 9 at ¶ 25); (2:21-CV-00141, Dkt. No. 1). That suit is *Vezer v. Bedeschi*, Civil Action 2:21-CV-00141. While Vezer's original Complaint did not mention its right to compel arbitration, Vezer actively pursued this right. On July 22—ten days after the first suit was filed—Vezer filed a demand with the American Arbitration Association, (Dkt. No. 9-3 at 1–2), and at least as early as July 27, Vezer's counsel conferred with Bedeschi's counsel about arbitration. (Dkt. No. 9-4). On August 6, Vezer removed *Bedeschi v. Vezer* to this Court and reserved its right to arbitration. (Dkt. No. 1 at 4). Finally, on August 20, Vezer filed its First Amended Complaint in *Vezer v. Bedeschi*, where it reserved its right to arbitrate, (Dkt. No. 9-5), and filed Motions to Compel Arbitration in both suits. (Dkt. No. 6); (2:21-CV-00141, Dkt. No. 9).

---

[9] Commentators note that while the case law uses the term "waiver" regarding this doctrine, it is better classified as estoppel because waiver traditionally has no prejudice requirement. *See, e.g.*, 8 Philip L. Bruner & Patrick J. O'Connor, *Bruner & O'Connor on Construction Law* § 21:178 (2021).

13

### 1. Vezer did not Substantially Invoke the Judicial Process

The first factor of waiver is whether the party seeking arbitration substantially invoked the judicial process. "Substantial invocation occurs when a party performs an overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Int'l Energy Ventures*, 999 F.3d at 266 (cleaned up).

Bedeschi argues that Vezer substantially invoked the judicial process by filing suit in *Vezer v. Bedeschi*, removing *Bedeschi v. Vezer* to this Court and filing an answer, and moving to compel arbitration in both suits five weeks after each had begun. (Dkt. No. 7 at ¶ 26). Bedeschi cites *Nicholas v. KBR, Inc.*, where the Fifth Circuit held "the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies. Indeed, short of directly saying so in open court, it is difficult to see how a party could more clearly evince a desire to resolve a dispute through litigation rather than arbitration[.]" 565 F.3d 904, 908 (5th Cir. 2009) (cleaned up). Bedeschi asserts that Vezer did just that in the second-filed companion case *Vezer v. Bedeschi*. (Dkt. No. 7 at ¶ 26). There, plaintiff Vezer's original Complaint did not reserve its right to arbitrate. (2:21-CV-00141, Dkt. No. 1).

Vezer disagrees that it substantially invoked the judicial process. (Dkt. No. 9 at ¶¶ 24–31). Vezer states that it made its initial demand to arbitrate with the American Arbitration Association on July 22, ten days after litigation in either suit commenced. (*Id.* at ¶ 25). In addition, Vezer notes that Bedeschi filed suit first and that Vezer is the defendant in *Bedeschi v. Vezer*. (*Id.* at ¶¶ 25–28). Vezer contrasts this behavior with *Nicholas* where the plaintiff sought arbitration and only did so after 10 months. *Nicholas*,

14

565 F.3d at 907.  While Vezer concedes that it is the plaintiff in *Vezer v. Bedeschi*, it argues that it reserved the right to arbitrate in its First Amended Complaint there.  (Dkt. No. 9 at ¶ 28); *see also* (2:21-CV-00141, Dkt. No. 7 at ¶ 55).  Last, Vezer maintains that there has been no substantial invocation of the judicial process because "no discovery of any kind has occurred in either case."  (Dkt. No. 9 at ¶ 28).  The Court agrees with Vezer.

First, the test in the Fifth Circuit is for "substantial invocation" of the judicial process, not "mere invocation."  In *Al Rushaid*, the Fifth Circuit noted that "there is no dispute that [the defendant] took steps to arbitrate as soon as it was served" when the defendant sent the plaintiff a demand to arbitrate 24 days after service.  757 F.3d at 418, 422.  Vezer made a demand after 10 days.

Second, there can be no insinuation that Vezer substantially invoked the judicial process in *Bedeschi v. Vezer*.  After all, *Bedeschi v. Vezer* is the lead case in these consolidated cases because it is the first-filed suit.  And, while Vezer is the plaintiff in *Vezer v. Bedeschi*, implicating *Nicholas*, it filed that lawsuit *after* Bedeschi filed its lawsuit the day before, making *Vezer v. Bedeschi* a "rare case in which initiating litigation would not be inconsistent with seeking arbitration."[10]  *Int'l Energy Ventures*, 999 F.3d at 266 (cleaned up).

---

[10] Vezer states that it was caught off guard by Bedeschi suing less than an hour after mediation was over.  *See* (Dkt. No. 9-5 at ¶¶ 34–43).  Vezer seeks damages for breach of contract in part because it argues that the timing of the suit and the fact that Bedeschi's state court Petition is marked "v3" indicate that Bedeschi was acting in bad faith.  (*Id.*).  Vezer's decision to file suit demonstrates its efforts to preserve its rights in fast-paced litigation, not an "overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration."  *Int'l Energy Ventures*, 999 F.3d at 266 (cleaned up).

15

Third, while Vezer's original Complaint in the second-filed suit did not reserve its right to arbitrate, its Amended Complaint (filed approximately five weeks after the original Complaint) does. Along with Vezer's other actions, this relatively quick amendment further demonstrates that Vezer's second-filed suit is not inconsistent with seeking arbitration.

Finally, the Fifth Circuit has noted that the "impetus for the plaintiff's change of heart in *Nicholas* was removal to federal court, so she was no longer in her desired forum." *Sabatelli v. Baylor Scott & White Health*, 832 F. App'x 843, 848 (5th Cir. 2020) (per curiam). Here, there is no such evidence that Vezer had a "change of heart" after suffering an adverse ruling. Rather, Vezer filed a separate suit to assert its side of the dispute instead of bringing counterclaims.

These facts—Vezer demanded arbitration expeditiously; Bedeschi filed suit first; the Amended Complaint in the second-filed suit reserves the right to arbitrate; and there have been no adverse rulings for either party—weigh in favor of finding that Vezer did not substantially invoke the judicial process.

This finding is consistent with the Fifth Circuit's holding in *Nicholas* that there are exceptions to the general rule that a plaintiff filing suit constitutes substantial invocation of the judicial process. *See* 565 F.3d at 908–09. While offering examples of exceptions to the general rule, such as a declaratory action and an action seeking injunctive relief, the Fifth Circuit also clarified that "[o]ther situations may arise justifying an exception; the list here should not be seen as exhaustive." *Id.* This makes sense because the law in this Circuit is that the facts of each case must be considered when determining waiver. *In re*

16

*Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010).  And just one year after *Nicholas*, the Fifth Circuit explained that "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration."  *Id.*

The above facts indicate that this controversy lies within *Nicholas*'s exceptions.  *Cf. Aptim Corp. v. McCall*, 888 F.3d 129, 141 (5th Cir. 2018) ("The facts of the present case, however, defy easy application of this seemingly straightforward rule.  In *Nicholas*, the filing of a lawsuit on the merits was followed by actual merits litigation, and the court found especially troubling the plaintiff's decision to seek arbitration following an adverse ruling . . . .  The present appeal does not implicate the feared second bite at the apple.").  The Court finds that Vezer did not substantially invoke the judicial process.

### 2. Vezer did not Prejudice Bedeschi

Even if Vezer substantially invoked the judicial process, it still has not waived its right to arbitrate because Bedeschi has not been prejudiced.  Prejudice occurs when a party suffers "delay, expense, or damage to its legal position because of an opposing party's pursuit of litigation."  *Int'l Energy Ventures*, 999 F.3d at 267 (cleaned up).  Bedeschi makes two arguments regarding prejudice.  Neither prevails.

First, Bedeschi asserts that it "had to expend time and resources to prepare multiple briefings in both Bedeschi's own first-filed lawsuit and [Vezer's] later-filed litigation[.]" (Dkt. No. 7 at ¶ 27).  This is not availing.  Concerning delay, Vezer invoked its right to arbitrate ten days after Bedeschi commenced litigation.  If prejudice is to be a meaningful inquiry at all, then ten days of delay cannot be prejudicial.  *Cf. Int'l Energy Ventures*, 999 F.3d at 261 (three months); *Nicholas*, 565 F.3d at 907 (ten months); *Sabatelli*,

832 F. App'x at 849 (sixteen months); *In re Mirant*, 613 F.3d at 591 (eighteen months).  Nor is this a case where the party seeking arbitration first resolves as much of the case as possible in federal court before seeking arbitration.  *See In re Mirant Corp.*, 613 F.3d at 592.  Rather, this is a case where the decision to arbitrate was made at the very earliest stages of litigation.  *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) ("The decision whether to arbitrate is one best made at the onset of the case[.]").

As to expense, a "party need only show that it was forced to expend substantial amounts of time and money defending itself in court."  *Int'l Energy Ventures*, 999 F.3d at 268 (cleaned up).  In this case, Bedeschi's primary expense has been contesting arbitration.  There is no indication that Bedeschi will have to relitigate issues that have been addressed in court.  *See Nicholas*, 565 F.3d at 910–11.  Therefore, the Court finds that Bedeschi has not been prejudiced.[11]

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Vezer's Motions to Compel Arbitration.  (2:21-CV-00164, Dkt. No. 6); (2:21-CV-00141, Dkt. No 9).  The Court **STAYS** Civil Actions 2:21-CV-00164 and 2:21-CV-00141 during arbitration.  The Clerk shall administratively close both cases pending further Order of this Court.

It is SO ORDERED.

---

[11]   Bedeschi also states "the very arbitration clause [Vezer] is attempting to enforce here is so vague and ambiguous that it alone prejudices Bedeschi." (Dkt. No. 7 at ¶ 28).  But this conflates its earlier contractual interpretation argument with prejudice.  Again, the Court's inquiry is whether the *judicial process* caused "delay, expense, or damage to [Bedeschi's] legal position[.]" *See Int'l Energy Ventures*, 999 F.3d at 267.

Signed on January 28, 2022.

                                             **DREW B. TIPTON**
                                 **UNITED STATES DISTRICT JUDGE**